665 A.2d 821

**COMMONWEALTH of Pennsylvania**

v.

**Robert FRANCIS, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 7, 1995.

Filed Sept. 20, 1995.

354

356

---

Harvey A. Sernovitz, Philadelphia, for appellant.

Thomas Dolgenas, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before ROWLEY, President Judge, and CIRILLO and HOFFMAN, JJ.

HOFFMAN, Judge.

This is an appeal from a September 16, 1994 judgment of sentence for two counts of homicide by vehicle.[1] Appellant, Robert Francis, raises the following issues for our review:

1. Was the evidence adduced at trial insufficient to prove the requisite elements of homicide by vehicle beyond a reasonable doubt?

2. Did the Commonwealth's introduction of evidence at trial that Appellant had a suspended license at the time of the underlying vehicular accident and the Commonwealth's elaboration thereon as to the number of Appellant's license suspensions breached [sic] the Commonwealth's oral agreement with defense counsel that it would not introduce any such evidence at trial constitute prosecutorial misconduct warranting a mistrial?

3. Did the trial court abuse its sentencing discretion in imposing consecutive sentences which were clearly outside the Sentencing Guidelines without first determining the

1. 75 Pa.C.S. § 3732.

appropriate sentences under the guidelines and without articulating its reasons for its deviation from the guidelines? Appellant's Brief at 3. For the following reasons, we reverse.

On May 5, 1993 at 12:30 p.m., appellant was driving in the center lane of southbound I–95 with a screen door tied to the roof of the car. At the time, the traffic flow was moderate to heavy, and a light rain was falling. When the door blew off the roof, appellant attempted to retrieve the door by backing up into the flow of traffic while still in the center lane. This caused a nine vehicle pileup, in which two individuals, Harry and Marie Rutter, were killed.

Appellant was subsequently arrested and charged with two counts of involuntary manslaughter,[2] one count of risking a catastrophe,[3] and two counts of homicide by vehicle. Following a bench trial, appellant was found guilty of two counts of homicide by vehicle. Post-verdict motions were denied, and this timely appeal followed.

■ Appellant first argues that the evidence presented at trial was insufficient to sustain the verdicts of homicide by vehicle. In evaluating a sufficiency claim, this Court must view all the evidence in the light most favorable to the verdict winner, draw all reasonable inferences in its favor, and then determine whether the fact finder could have reasonably found every element of the crime to be established beyond a reasonable doubt. *Commonwealth v. Nicotra*, 425 Pa.Super. 600, 603, 625 A.2d 1259, 1261 (1993).

■ To establish homicide by vehicle, the Commonwealth must prove beyond a reasonable doubt that the defendant violated a provision of the Motor Vehicle Code and that this violation was a cause of the victim's death. *See Commonwealth v. Cheatham*, 419 Pa.Super. 603, 607–08, 615 A.2d 802, 804–05 (1992). Causation will only be found where the defendant's violation of the Motor Vehicle Code was a direct and substantial factor in the death of the victim, and the fatal

**2.** 18 Pa.C.S. § 2504.

**3.** 18 Pa.C.S. § 3302.

result was not extraordinary or remote. *Commonwealth v. Rementer*, 410 Pa.Super. 9, 22–23, 598 A.2d 1300, 1306 (1991), *appeal denied*, 533 Pa. 599, 617 A.2d 1273 (1992). The Commonwealth must also establish that the defendant's conduct was criminally negligent or reckless. *Commonwealth v. Heck*, 517 Pa. 192, 201, 535 A.2d 575, 580 (1987).

After careful review of the record and the parties' briefs, we conclude that there was sufficient evidence to convict appellant of homicide by vehicle. The Commonwealth established beyond a reasonable doubt that appellant violated 75 Pa.C.S. § 4903, which prohibits any backing up on a limited access highway such as I–95. The Commonwealth also proved beyond a reasonable doubt, through expert and eyewitness testimony, that appellant's act of backing up his vehicle into traffic directly caused Mr. Rutter to lose control of his vehicle, which precipitated the multiple vehicle accident in which the Rutters were killed. Finally, we find that appellant's conduct was criminally negligent, as the backing up of a vehicle into oncoming traffic traveling 55 miles per hour is a gross deviation from the standard of care observed by a reasonable person. *See Heck*, 517 Pa. at 201, 535 A.2d at 580 (criminal negligence requires gross deviation from standard of care reasonable person would observe); *In the Interest of Hyduke*, 371 Pa.Super. 380, 388, 538 A.2d 66, 70 (1988) (criminal negligence established where appellant drove 85 miles per hour, lost control of his vehicle, and crossed the center line); *Cheatham*, 419 Pa.Super. at 611–12, 615 A.2d at 806–07 (epileptic was criminally negligent for driving while knowing he was subject to seizures). Accordingly, we find that appellant's sufficiency claim has no merit.

■ Next, appellant contends that the prosecutor's misconduct at trial was so egregious that a new trial is warranted. Specifically, before trial, defense counsel notified the prosecution that he intended to make both a motion in limine to exclude appellant's suspended driving privileges and his driving record from trial, and a motion to suppress appellant's admission at the scene of the accident that his license was suspended. At that time, the prosecution informed defense

counsel that these motions would not be necessary, and he orally agreed to exclude such evidence from trial. Appellant maintains that the prosecutor deliberately and willfully breached this agreement, which prevented him from receiving a fair trial.

The Pennsylvania Supreme Court has stated that "[t]he essence of a finding of prosecutorial misconduct is that the prosecutor, a person who holds a unique position of trust in our society, has abused that trust in order to prejudice and deliberately mislead [the factfinder]." *Commonwealth v. Pierce*, 537 Pa. 514, 529, 645 A.2d 189, 197 (1994). This trust includes a prosecutor's duty to live up to its agreements with defense counsel. *See Commonwealth v. Ginn*, 402 Pa.Super. 405, 587 A.2d 314 (1991) (enforcing prosecutor's agreement to dismiss charges if defendants were cleared of theft by an accountant, despite prosecutor's contention that accountant's audit was inadequate). Prosecutorial misconduct will justify a new trial where the unavoidable effect of the conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict. *See Pierce*, 537 Pa. at 528, 645 A.2d at 196. If the prosecutorial misconduct contributed to the verdict, it will be deemed prejudicial and a new trial will be required. *Commonwealth v. Weisman*, 401 Pa.Super. 62, 71, 584 A.2d 980, 985 (1990), *appeal denied*, 528 Pa. 644, 600 A.2d 195 (1991).

Here, a review of the record reveals that the Commonwealth questioned an investigating officer about whether appellant had a valid driver's license at the time of the accident. The officer answered that appellant admitted at the scene of the accident that his license was suspended. Following a timely objection by defense counsel, there was a discussion among both counsel and the trial court over the relevancy of this line of questioning and the breach of the pre-trial agreement. During this discussion, the prosecutor deliberately and unnecessarily revealed to the trial court that appellant's driver's license had been suspended twenty times. Therefore, we find that the prosecutor directly violated the pre-trial agree-

ment between the parties, and abused the trust placed in him by defense counsel. *See Pierce, supra.*

We further note that both the status of appellant's license at the time of the accident and appellant's previous license suspensions were not only irrelevant to the charge of homicide by vehicle but highly prejudicial to appellant.[4] *See Cheatham,* 419 Pa.Super. at 609, 615 A.2d at 805 (stating that the violation of driving without a valid license will not, in and of itself, support a charge of homicide by vehicle). In fact, the Commonwealth acknowledged on the record that the status of appellant's license at the time of the accident was not a direct and substantial cause of the accident that killed the Rutters. N.T., June 6, 1994 at 148–49. Accordingly, we find that the prosecutor's breach of the pre-trial agreement with defense counsel was a deliberate attempt to reveal information that would mislead the factfinder and prejudice appellant. Consequently, we find that the record supports a finding of prosecutorial misconduct.

However, to order a new trial, we must also find that the misconduct actually prejudiced the factfinder. *Pierce, supra.* We recognize that trial judges are presumed to ignore prejudicial material when acting as factfinder. *Commonwealth v. Irwin,* 432 Pa.Super. 508, 513, 639 A.2d 52, 54 (1994), *appeal denied* 540 Pa. 629, 658 A.2d 793 (1994). However, in the instant case, the record demonstrates that the material improperly introduced by the prosecutor influenced the verdict. Immediately after the prosecutor disclosed that appellant's license had been suspended twenty times, the trial court asked, "How many times?" Thereafter, the court continued to refer to the fact that appellant's license had been suspended twenty times, that appellant should not have been driving at the time of the accident, and that the suspensions were relevant to the offense of homicide by vehicle.

4. Although the admissibility of this evidence was never decided below because of the agreement between counsel, we believe the evidence should have been excluded from trial because it was both irrelevant and unduly prejudicial to appellant.

For example, the following exchange occurred after the court had learned that the license suspensions were offered improperly and after the prosecution admitted that the license suspensions were not relevant to the charge of homicide by vehicle:

The Court: He shouldn't have been driving and you know it. It's unbelievable. How many suspensions, twenty?

[Defense Counsel]: "How many suspensions, twenty?" I renew my request for a mistrial.

The Court: No. I think it's relevant. Somebody who willfully drives a car knowing that he has a suspended license is a violation of the law. That's part of vehicular homicide.

N.T., June 6, 1994 at 206.

In addition, after rendering its verdict, the trial court stated the following:

The Court: Look, ... [appellant] has been very negligent as a driver, and he is very lucky he hasn't killed more people, with all those suspensions and everything, even driving around without a license. I mean, it's incredible to me how many people there are in this city when I get into my car to drive I don't know if the person who is ahead of me has a license, let alone insurance.

N.T., June 6, 1994 at 236. *See also* N.T., September 7, 1994 at 5–6 (at the sentencing hearing, the trial court affirmed its belief that the prosecution was correct in introducing appellant's driving record as it was relevant to appellant's mens rea for homicide by vehicle).

Therefore, as these comments by the trial court demonstrate that appellant's license suspensions contributed to the verdict of homicide by vehicle, we find that the prosecutor's willful breach of the agreement to exclude the suspensions from evidence prejudiced appellant. *See Weisman, supra.*

Accordingly, for the above reasons, we reverse the judgment of sentence and remand for a new trial.[5]

Reversed and remanded. Jurisdiction relinquished.

5. Because of our disposition of the above issue, we need not address appellant's third claim.