J-S18004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN MAPP, | |
| Appellant | No. 2402 EDA 2013 |

Appeal from the Judgment of Sentence Entered March 8, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000118-2010

BEFORE:  BENDER, P.J.E., ALLEN, J., and MUNDY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 02, 2015**

Appellant, Steven Mapp, appeals from the judgment of sentence of life imprisonment without the possibility of parole, imposed after a jury found him guilty of first-degree murder and related offenses.  After careful review, we affirm.

On August 4, 2009, at approximately 11:00 p.m., Jabar Thomas ("Thomas") got out of a van that was parked on the corner of Reed Street and South Hicks Street and entered his mother's home at 1413 South Hicks Street in the City of Philadelphia.  Thomas promptly exited his mother's home and got into his Nissan Maxima that was parked in front of the home. Moments later, co-defendants Demetrius Cox ("Cox") (a.k.a. "Meat") [and Appellant] (a.k.a. "Chunky")[,] fired approximately nine (9) gunshots at Thomas, shooting out the windshield of the vehicle in the process.  Cox and [Appellant] then ran toward Dickinson Street before cutting through an alley between South Hicks and 15th Street.

Thomas was found slumped over the center console of his vehicle with a large wound to the back of his head.  Thomas was put in the back of a police vehicle and taken to Thomas Jefferson

University Hospital. On August 7 at 1:15 p.m.[,] Thomas was pronounced dead from multiple gunshot wounds, the fatal wound being the one to the back of his head.

…

At trial, the jury heard testimony from numerous civilian witnesses, police officers, detectives, as well as the medical examiner, Dr. Collins. Multiple witnesses testified that [Appellant] and Cox were part of a group of young men who had an ongoing rivalry over the sale of drugs with another neighborhood group with which Jabar Thomas was associated. The rivalry resulted in a number of homicides, including the instant murder of Jabar Thomas. The testimony of Neal Kitchen established that, shortly before Thomas was killed, Cox and [Appellant] were walking up the 1500 block of Dickinson Street and [Appellant] was telling people to "watch the corner." The testimony of Tangia Hargust[] and Raheem Hargust corroborated that of Neal Kitchen, affirming [Appellant]'s instruction to "watch the corners," and further established that Cox was telling people to go inside the house. The testimony of these three witnesses also established that one to two minutes after Cox and [Appellant] passed the 1500 block of Dickinson Street, numerous gunshots were fired and Cox and [Appellant] were subsequently seen running back toward Dickinson Street before cutting through an alley between South Hicks and 15th Street. As they were running by, the back of a gun was visibly protruding from Cox's waistband. Cox and [Appellant] were known to carry guns and had been saying that all of the guys from the block of South Hicks Street and Reed Street were "going to get theirs." In addition, the jury heard testimony from Nelson Jones which established that Thomas had gone into his mother's home on South Hicks Street, exited the home shortly thereafter, and was shot in his car moments later. Mr. Jones' testimony corroborated the identification of Cox and [Appellant] as the shooters and identified both Cox and [Appellant] as carrying guns. Additionally, he saw Cox and [Appellant] cut through an alley and run away from the crime scene. Mr. Jones' testimony also established that a few days prior to Thomas' murder, Cox had asked Mr. Jones how he would "get a person" to which Jones responded that "everybody got to go see they mom or they girl." Further, the jury heard testimony from Aaron Grimes which established that, on the day after Thomas was shot, Cox told Grimes that he "and another guy went down there and caught him and we just started letting him have it." Although Neal Kitchen, Raheem Hargust, Nelson Jones, and Aaron Grimes

disavowed many of the averments made in their respective statements to police, the signed statements were properly admitted as evidence at trial through the testimony of Detectives Singleton and Williams. The statements were admissible for their truth as prior inconsistent statements that were signed and adopted by the declarants.

The jury also heard testimony from numerous members of the Philadelphia Police Department. Officers Dobbins, Lai, and Dyrda testified that, on the night Thomas was killed, they responded to a radio call for gunshots on the 1400 block of South Hicks Street. Upon arrival, they observed Thomas slumped over the console of his vehicle with a gunshot wound to the back of his head and immediately transported him to Jefferson Hospital. Officers Fox and Welsh provided testimony regarding the ballistic evidence, specifically that nine (9) nine millimeter fired cartridge casings, two (2) projectiles, and one (1) fragment were recovered from the scene. Officer Welsh concluded that all nine fired cartridge casings were fired from the same firearm, but could not determine exactly how many firearms were fired when Thomas was killed. Detectives Williams, Singleton and Byard all testified regarding the details of the investigation, providing the jury with information about the various persons interviewed and the statements and identifications given to police. Finally, Dr. Collins testimony established that the decedent's death was a homicide caused by a fatal gunshot wound to the back of the head.

Trial Court Opinion (TCO), 3/28/14, at 4-8 (footnotes omitted).

Appellant was charged with first-degree murder, conspiracy (murder), carrying a firearm without a license, carrying a firearm on public property in Philadelphia, and possession of an instrument of crime. Appellant's joint trial with co-defendant Cox began on January 11, 2003, and concluded when the jury convicted Appellant of all the above-listed offenses. On March 8, 2013, the trial court sentenced Appellant to concurrent mandatory terms of life imprisonment for first degree murder and conspiracy, and to no further penalty for the remaining charges. Appellant's timely filed post-sentence

motion was denied by operation of law on July 17, 2013. Appellant filed a timely notice of appeal on August 15, 2013. He filed a timely Pa.R.A.P. 1925(b) statement on September 12, 2013, and the trial court issued its Rule 1925(a) opinion on March 28, 2014.

Appellant now presents the following questions for our review:

1) Whether evidence was sufficient to convict Appellant of [m]urder, [c]onspiracy, [firearms offenses], and [p]ossessing an [i]nstrument of [c]rime where the only evidence connecting Appellant to the crime was a statement by the co-defendant made to another who testified at trial which was admitted in violation of **Bruton**[1] and inadmissible hearsay admitted through unreliable witness statements?

2) Whether the trial court erred by granting the Commonwealth's last minute, day of trial motion to admit "other acts evidence" over objection by defense, particularly where the prosecutor misrepresented his provision of discovery to defense; where the probative value of the admitted other acts evidence was outweighed by its prejudicial effect on the Appellant; where the vastness or extent of the other acts evidence resulted in a trial by ambush where evidence was highly prejudicial; where the evidence unequivocally overshadowed the evidence in the underlying case; tended to confuse the jury; lacked a connection between the other homicides and the Appellant; and involved the admission of property receipts, 75-48s, statements, testimony from crime scene and warrant officers, and crime scene photos of three other homicides where no direct or indirect connection remotely indicated that [Appellant] was involved in the other alleged homicides?

3) Whether prosecutorial misconduct occurred where the Commonwealth attorney represented that the discovery

_____

[1] **Bruton v. United States**, 391 U.S. 123 (1968).

- 4 -

regarding the three homicides had been provided to defense, when the Commonwealth failed to supply complete discovery prior to trial in violation of **Brady**[2]?

4) Whether prosecutorial misconduct occurred where the attorney for the Commonwealth repeatedly introduced, referred to, or presented evidence either ruled inadmissible by the court, or agreed inadmissible among the attorneys?

5) Whether the trial court abused its discretion by [] permitting the statements by Commonwealth witnesses, Aaron Grimes and Nelson Jones, to be presented to the jury during deliberations resulting in undue emphasis or undue influence on the Commonwealth evidence particularly where the court declined to read the testimony to the jury as requested by the jury and where the statements were the subject of an extensive pre-trial motion in limine?

6) Whether Appellant's rights to confrontation under the U.S. and Pennsylvania Constitutions (Amendments VI and XIV; Art. 1 § 9 respect[ively]) were violated where the Commonwealth was permitted to introduce evidence through police officers/personnel where their evidence could only be based on hearsay or information received from witnesses who were not present at trial and were unavailable for cross examination?

7) Whether the verdicts were against the weight of the evidence?

8) Whether the trial court erred in failing to grant Appellant appropriate credit for time served in custody while awaiting trial?

9) Whether the cumulative effect of unlawfully admitted evidence during trial resulted in an unfair trial which demands the grant of a new trial?

Appellant's Brief, at 4-6.

_____

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

**1.**

Appellant's first claim concerns the sufficiency of the evidence, for which our overarching standard of review is as follows:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

In a meandering argument, Appellant contends that his conviction was not supported by sufficient evidence due to various inconsistencies in the testimony and prior statements of Nelson Jones. As a preliminary matter, the Commonwealth asserts that Appellant has essentially waived his sufficiency claim by failing to identify which elements of which crimes the Commonwealth purportedly failed to prove. While we agree that Appellant has not specifically identified any specific element for scrutiny, it is apparent from the nature of his argument that he is challenging the sufficiency of the evidence as it pertains to his identity as one of the victim's killers. Appellant's identity as one of the victim's assailants was a common element

to every crime for which Appellant's was convicted. Thus, we reject the Commonwealth's waiver argument in this regard.

Nevertheless, the entirety of Appellant's sufficiency argument is geared toward attacking the credibility of Jones' account of the shooting.[3] It is axiomatic that "it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." *Commonwealth v. Moore*, 648 A.2d 331, 333 (Pa. Super. 1994). Appellant's various attacks on Jones' credibility are directed to the weight, rather than to the sufficiency, of the evidence. Accordingly, Appellant's first claim lacks merit.

We note that Appellant's statement of the question involved appears to interweave a *Bruton* claim with his sufficiency claim. On its face, this is improper under the Rules of Appellate Procedure, which dictate that "[t]he argument shall be divided into as many parts as there are questions to be argued[.]" Pa.R.A.P. 2119(a). Regardless, despite Appellant's invocation of *Bruton* in his statement of the question, his first argument fails to even cite *Bruton*, much less discuss any relevant *Bruton*-related claim. Even if there is a *Bruton*-related issue in this case, it is immaterial to our analysis regarding the sufficiency of the evidence. When reviewing a sufficiency

---

[3] Jones' account of the shooting derived from statements he made to police and at Appellant's preliminary hearing. Those pre-trial statements were admitted into evidence as prior inconsistent statements at Appellant's trial because Jones had largely recanted them when called to testify.

claim, this Court is obligated to consider "the entire record[,]" which includes "all evidence actually received" by the factfinder. *See Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005). Consequently, even if certain evidence was erroneously admitted at trial, this Court must consider it for sufficiency review purposes.

**2.**

Next, Appellant argues that the trial court erred when it granted the Commonwealth's motion to admit "other acts evidence" concerning his involvement in an ongoing drug-related gang war. Appellant presents several bases for the court's error in this regard. First, Appellant complains that the motion to admit evidence of these acts was a form of ambush, as it was not filed until just prior to trial. Second, Appellant argues that the court erred because the evidence of other homicides was from police responding to those homicides rather than by direct eyewitnesses. Third, Appellant contends that the other-homicide evidence was insufficiently related to his actions in this case.

> The admission of evidence is solely within the province of the trial court, and a decision thereto will not be disturbed absent a showing of an abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will discretion ... is abused.

*Commonwealth v. Murray*, 83 A.3d 137, 155-56 (Pa. 2013) (internal citations and quotation marks omitted).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, the same evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Appellant's first argument concerns Rule 404(b)(3). That rule provides that: "In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial." Pa.R.E. 404(b)(3). Appellant essentially contends that he was not afforded sufficient notice because the Commonwealth did not file its motion until just prior to his trial.

This claim fails, in part, on its face. Appellant concedes that the Commonwealth filed a pre-trial motion to seek admission of the disputed evidence.[4] Thus, there can be no dispute that the Commonwealth sought admission of the evidence "in advance of trial[.]" Pa.R.E. 404(b)(3).

_____

[4] Appellant notes that the prosecutor appeared in court on January 7, 2013 to litigate the Commonwealth's other-bad-acts motion. Appellant's Brief, at 28. As noted above, Appellant's trial did not begin until January 11, 2003.

However, Rule 404(b)(3) also requires that the notice given must be reasonable. In this regard, Appellant contends that the Commonwealth "had three and on-half years to present its motion and failed to do so until the day the case was scheduled for trial." Appellant's Brief, at 28. Appellant essentially claims that notice was unreasonable because he was bombarded with a large volume of documentary evidence concerning the other homicides on the eve of trial.

This aspect of his claim also lacks merit. Appellant does not direct this court's attention to any request to postpone the trial premised upon his need to review this evidence. Instead, he baldly asserts that the volume of evidence was overwhelming, without any reference to the record or other explanation regarding how or why he was unable to efficiently deal with or react to the evidence in question. Relatedly, Appellant has not described how this case would have, or even could have, transpired any differently had he been afforded more time to review the Commonwealth's other acts evidence. Reasonableness is always a contextual consideration, and Appellant has simply failed to explain how the notice in question was unreasonable in the circumstances of this case.

Moreover, Appellant has not provided this Court with any authorities which would suggest that the Commonwealth's notice was unreasonable. Appellant's citation of **Commonwealth v. Shelton**, 640 A.2d 892 (Pa. 1994) is off-point. In **Shelton**, our Supreme Court reversed a conviction where the appellant was not given any notice of the disputed evidence—

testimony that he had sold narcotics to an officer—until the prosecutor mentioned it in his opening statement at the beginning of trial. Furthermore, the appellant in **Shelton** requested, but was denied, a continuance of the trial in light of the new information.

Here, the disputed evidence was presented by the Commonwealth days before Appellant's trial began. Appellant has not directed this Court's attention to any portion of the record that demonstrates that he requested, and was denied, additional time to deal with the new evidence. Thus, **Shelton** is not on point. Consequently, we conclude that Appellant's second claim lacks merit.

Regarding the manner in which such evidence was admitted, Appellant complains that no witnesses to the other homicides offered testimony, as the Commonwealth relied on officers who responded to those homicides. However, Appellant fails to identify where specific evidence was admitted over his objection in the record, and he provides no legal argument as to why such objections should have been granted, but for the overarching claim discussed below. Accordingly, Appellant has waived any claims regarding the manner in which such evidence was admitted.

Appellant does claim, however, that *none* of the evidence pertaining to the other homicides should have been admitted because such evidence was not sufficiently related to this case. We understand this claim to be a challenge to the relevancy of the other-homicide evidence, as well as a challenge to the inadmissibility of such evidence under Rule 404(b)(1).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Pa.R.E. 401(a). The trial court found the other-homicide evidence relevant as evidence of Appellant's motive, which simultaneously constitutes an exception to Rule 404(b)(1) pursuant to Rule 404(b)(2). Rule 404(b)(2) provides that evidence of another crime, wrong, or other act is admissible if it goes to prove motive.

As the trial court explains:

> On appeal, [Appellant] asserts that this court erred in admitting police testimony and documents related to other homicides that resulted from the same ongoing neighborhood drug rivalry that motivated the instant killing of Jabar Thomas. This court disagrees. At trial, Cheryl Harrington and Sharon Brightman provided testimony describing the background of the neighborhood rivalry, based upon the circumstance of their own drug purchases from individuals associated with the two groups. Additionally, Officers Holmes, Peterson, and Reed testified regarding their involvement and the police documents in the related shootings of Darryl Pray and Tyrell Smack, that occurred within hours of one another and two weeks prior to the shooting of Jabar Thomas. This court permitted all of this evidence to be introduced at trial as evidence of motive for the shooting of Jabar Thomas, as this court found that the Thomas shooting grew out of these prior shootings, given the context of the ongoing neighborhood rivalry. Further, this court gave the jury an instruction limiting any consideration of such evidence solely to the evaluation of the defendant's intent or motive. Specifically, this court instructed the jury as follows:
>
> > The Commonwealth is not required to prove a motive for the commission of the crimes charged. However, you should consider any evidence of motive or lack of motive. Knowledge of human nature tells us that an ordinary person is more likely to commit a crime if he or she has a motive than if he or she has none. You should weigh and consider any evidence tending to show motive or absence of motive along with all the other evidence in deciding whether each defendant is guilty or not guilty of the crimes

charged. It is entirely up to you to determine what weight should be given the evidence concerning motive. Now, you have heard other evidence regarding matters involving allegations of killings not of Jabar Thomas. Neither defendant is charged with committing any crime other than the charges related to the killing of Jabar Thomas, and I will be defining these for you in a moment. You may not take this other evidence as a substitute for proof that either defendant committed the crimes charged here nor alleviate the Commonwealth's burden to prove each defendant guilty beyond a reasonable doubt of the crimes charged, nor may you consider it as proof that either defendant has a criminal personality or bad character. Indeed, in a moment, I will be explaining the evidence of good character that each defendant presented. You may consider the other evidence solely on the limited issue of either defendants intent or motive in the crimes charged here.[42]

___

[42] N.T., 1/18/2013, at 24-25.

___

In consideration of the close proximity of the three shootings, the fact that the three victims were all associated with neighborhood groups involved in an ongoing drug rivalry, and the limited purpose for which the evidence could be considered by the jury, this court found that the probative value of the evidence outweighed its potential prejudice to the defendant and, thus, properly permitted the evidence to be introduced at trial.

TCO, at 15-16.

We agree with the trial court. The evidence in question was relevant and admissible under Rule 404(b)(2) for the limited purpose of demonstrating Appellant's and his co-defendant's motive for killing Thomas. We find any resulting prejudice adequately mitigated by the thorough

instruction issued by the trial court regarding that evidence. Accordingly, this aspect of Appellant's second claim lacks merit.

**3.**

Next, Appellant asserts that a ***Brady*** violation and/or prosecutorial misconduct occurred in the Commonwealth's handling of the disclosure of the other-homicide evidence pertaining to Appellant's motive. Appellant contends that the related discovery promised by the prosecutor was never provided to the defense. The trial court acknowledges that "the prosecutor's misrepresentations and conduct toward both the court and defense counsel were highly inappropriate and unprofessional," but that the court "was able to cure the deficiencies in discovery at trial, thereby preventing prejudice toward [Appellant] and ensuring a fair trial." TCO, at 22.

"Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." ***Commonwealth v. Rolan***, 964 A.2d 398, 410 (Pa. Super. 2008). "In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one." ***Id.*** (quoting ***Commonwealth v. Harris***, 884 A.2d 920, 927 (Pa. Super. 2005)).

> The law governing alleged ***Brady*** violations is well-settled. In ***Brady***, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." ***Brady***, 373 U.S. at 87, 83 S.Ct. at 1196–97. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, ***United States v. Agurs***, 427

> U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), and that the duty may encompass impeachment evidence as well as directly exculpatory evidence, **United States v. Bagley**, 473 U.S. 667, 676–77, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985). Furthermore, the prosecution's **Brady** obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution. **Kyles v. Whitley**, 514 U.S. 419, 438, 115 S.Ct. 1555, 1568, 131 L.Ed.2d 490 (1995); **Commonwealth v. Burke**, 566 Pa. 402, 781 A.2d 1136, 1142 (2001).

**Commonwealth v. Lambert**, 884 A.2d 848, 853-54 (Pa. 2005).

Appellant contends prosecutorial misconduct occurred when the Commonwealth committed a **Brady** violation. The Commonwealth argues, however, that **Brady** is not implicated because Appellant has not demonstrated that the evidence in question is favorable to him. We agree with the Commonwealth. In the argument portion of Appellant's brief raising the instant claim, Appellant only identifies the alleged **Brady** material as the other-homicide evidence. He does not specifically identify which specific evidence was undisclosed, nor does he direct us to the portion of the record where such materials were offered into evidence by the Commonwealth. Thus, we have no basis upon which to evaluate whether the alleged non-disclosures constituted evidence that could be construed as favorable to him, whether it be directly exculpatory or useful for impeachment purposes. Accordingly, we conclude that Appellant has failed to demonstrate that the Commonwealth violated **Brady**.

However, the trial court does acknowledge that the prosecutor engaged in "highly inappropriate and unprofessional" conduct in the manner

in which the Commonwealth provided discovery material to Appellant. It is, therefore, at least plausible that Appellant could have a prosecutorial misconduct claim based on prosecutor's misrepresentations regardless of whether **Brady** was violated. However, the trial court determined that any resulting prejudice did not rise to the level of depriving Appellant of a fair trial.

"Prosecutorial misconduct will justify a new trial where the unavoidable effect of the conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict." **Commonwealth v. Francis**, 665 A.2d 821, 824 (Pa. Super. 1995). "If the prosecutorial misconduct contributed to the verdict, it will be deemed prejudicial and a new trial will be required." **Id.**

Appellant does not discuss in any detail how he was prejudiced by the prosecutor's misconduct to an extent that deprived him of a fair trial, other than to baldly assert that he was "the victim of a trial by ambush." Appellant's Brief, at 34. Nor does Appellant describe, identify, or explain how the prosecutor's (mis)behavior "contributed to the verdict." **Francis**, 665 A.2d at 824. As such, Appellant has simply failed to convince us that he was deprived of a fair trial due to the prosecutor's misconduct as acknowledged by the trial court. Accordingly, we conclude that the trial court did not abuse its discretion when it declined to grant a mistrial on that basis.

**4.**

Next, Appellant asserts that prosecutorial misconduct occurred when the prosecutor "repeatedly introduced, referred to, or presented evidence either ruled inadmissible by the court, or agreed inadmissible among the attorneys[.]" Appellant's Brief, at 34. In the argument section of his brief pertaining to this issue, Appellant directs our attention by reference to the record to numerous instances of purported misconduct. However, Appellant presents these instances of misconduct in a disjointed manner. He meanders from a complaint about discovery (alleging that the prosecutor misrepresented the scope of other acts evidence that the Commonwealth intended to present),[5] to the Commonwealth's failure to conform to specific rulings by the court (regarding the prosecutor's questioning of witnesses about portions of their prior statements that were ordered redacted by the court), to misconduct in the manner in which certain witnesses were questioned (such as asking leading questions of witnesses' regarding information known to the prosecutor not to exist in the witnesses' prior statements, so as to suggest to the jury that the information was contained therein). Simply put, Appellant has failed to confine this argument to a single or, at least, related instances of alleged misconduct. **See** Pa.R.A.P. 2119(a) ("[t]he argument shall be divided into as many parts as there are

_____

[5] This aspect of Appellant's fourth claim is largely indistinguishable from his third claim.

questions to be argued[.]") Indeed, "when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007); ***see also*** Pa.R.A.P. 2101.

Moreover, the Commonwealth contends that Appellant waived these various claims because he "did not did not make his mistrial motion until the end of trial. To preserve an argument that the trial court abused its discretion in not granting a mistrial, [Appellant] was required to not only to raise contemporaneous objections but to timely request a mistrial when those objections were sustained." Commonwealth's Brief, at 24. We agree.

In ***Commonwealth v. Brown***, 467 A.2d 393 (Pa. 1976), the appellant objected to prosecutorial misconduct. The trial court sustained the objection, and issued instructions to the prosecutor to "stay away from that area of argument." ***Id.*** at 396. However, the appellant requested neither a mistrial nor a curative instruction. Consequently, our Supreme Court determined that the appellant had waived appellate review of his prosecutorial misconduct claim.

The same circumstances are present in the instant case. Following each instance of misconduct, the trial court sustained Appellant's objections. Appellant did not contemporaneously request a mistrial or otherwise seek curative instructions. Consequently, these individual claims of prosecutorial misconduct have been waived.

Nevertheless, were we able to reach the merits of these claims, the diligent efforts of the trial court demonstrate that no relief would be warranted. The trial court adequately addressed these claims of prosecutorial misconduct in its Rule 1925(a) opinion. *See* TCO, at 21-29. Therein, the court acknowledged the various instances of misconduct, and demonstrated by extensive citations to the record that the "court responded to the objections of defense counsel and, in correcting the prosecutor's missteps, was able to ensure that [Appellant] received a fair trial." TCO, at 29. Thus, were they not waived, we would find that these prosecutorial misconduct claims lack merit for the reasons set forth in the well-reasoned opinion of the trial court, and that Appellant was not denied a fair trial as a result of the prosecutor's misdeeds. Accordingly, the trial court would not have abused its discretion in declining contemporaneous requests for mistrial had they been timely made.

**5.**

In Appellant's fifth claim of error, he asserts that the trial court abused its discretion when it permitted the jury, during its deliberations, to review the written statements of witnesses Aaron Grimes and Nelson Jones. As previously noted, the statements in question were admitted as prior inconsistent statements of both Grimes and Jones, who, when called to testify in this case, recanted their previous statements implicating Appellant and his codefendant in the murder of Jabar Thomas.

"[W]hether an exhibit should be allowed to go out with the jury during deliberation is within the discretion of the trial judge, and such decision will not be overturned absent an abuse of discretion." *Commonwealth v. Dupre*, 866 A.2d 1089, 1102 (Pa. Super. 2005). However, this discretion is limited by the Pennsylvania Rules of Criminal Procedure, which dictate that, "[u]pon retiring, the jury may take with it such exhibits as the trial judge deems proper," subject to several exceptions. Pa.R.Crim.P. 646(A). Rule 646(C) prohibits the jury from reviewing during deliberations:

> (1) a transcript of any trial testimony;
>
> (2) a copy of any written or otherwise recorded confession by the defendant;
>
> (3) a copy of the information or indictment; and
>
> (4) except as provided in paragraph (B), written jury instructions.

Pa.R.Crim.P. 646(C).

Appellant does not contend that the exhibits in question are prohibited by Rule 646(C). Instead, he complains that the trial court "changed its original ruling that the witness[es'] statements would not be presented to the jury, to permitting them to view the redacted statements…." Appellant's Brief, at 42. Appellant believes the court abused its discretion in this regard because the jury "would put undue and unjust emphasis on the statement[s] where there had been substantial testimony from each of the witnesses which would not be reviewed by the jury[,]" and because "[t]he extent of the redactions" might invite the jury "to fill in the reacted portions of the

statement[s]" with content and or conclusions "not in evidence." Appellant's Brief, at 43.

At the time the jury made the request for the statements, the court understood that two objections were being made by the defense to the admission of those previously admitted exhibits: first, that the previous ruling of the court had been not to permit the jury to review the statements during deliberations, and second, that there was an issue regarding the form of the statements available to present to the jury. The latter objection arose because the defense was not confident that the redacted statements available to present to the jury were the same versions that had been admitted into evidence, because multiple versions of the redacted statements had been circulated between the attorneys and the court.

Regarding the first objection, the trial court indicated that: "[t]he reason that I don't send them [witnesses' statements] back just regularly is I don't believe that the jury has time to sift through all the evidence, particularly in a case that's lasted this long. Now that the jury has been deliberating for however long, in theory that reason for not sending them back is gone." N.T., 1/22/13, at 25. After days of deliberation, the jurors decided that it was critical to their determination of guilt, innocence, or the degree of guilt, that they review the prior inconsistent statements of Jones and Grimes. The trial court's reasoning for excluding the statements from the jury's deliberations—ostensibly to prevent them from being overwhelmed

by the volume of evidence presented—was no longer valid. We ascertain no abuse of discretion in this regard.

The second objection, pertaining to the form of the statements, has been waived for our review. Defense counsel was permitted to examine the documents before they were given to the jury in order to ensure that all proper redactions were made before the statements were given to the jury as per its request. After Appellant's counsel was afforded that opportunity, there were no further objections lodged or instructions requested. As such, Appellant's objection to the form of the documents was effectively sustained and Appellant has not preserved any additional objection to the form of those documents. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Appellant also claims the jury was likely to place undue emphasis on the statements because the jury did not also receive for review the testimony of Nelson Jones and Aaron Grimes recanting those statements *because* the Court "declined to read the testimony to the jury as requested by the jury[.]" Appellant's Brief, at 42. Appellant's formulation of the purported error that occurred misconstrues the record, as is explained by the trial court. The trial court, referring to the sequence of jury questions it received in regard to the statements, explained:

> The jury questions clearly show that the jury first asked for the statements of Nelson Jones and Aaron Grimes and were initially told that they would have to rely on their recollection. After further deliberations, the jury then requested the court transcripts of Nelson Jones and Aaron Grimes and were

- 22 -

instructed that the court could not provide them with the written transcripts, but could have the testimony read back, acknowledging the lengthy preparation that would be required. The jury indicated that they were interested in hearing the testimony, but two hours later, sent a second request for the statements of Nelson Jones and Aaron Grimes. This court then inquired if the statements were requested instead of or in addition to the rereading of the testimony and the jury indicated that they preferred to have the statements instead of the testimony. In consideration of these multiple, specific requests for witness statements over the course of two days of deliberation, this court properly permitted the statements of Nelson Jones and Aaron Grimes to go back to the jury with the necessary redactions, pursuant to this courts evidentiary rulings throughout the trial.

TCO, at 30-31.

We agree with the trial court that it did not refuse to allow the jury to review Jones' and Grimes' testimony; to the contrary, the trial court asked the jury if it wanted to review that testimony (by having it read back to the jury), and the jury declined to hear it. This was not a situation where the court permitted the jury to review the witnesses' statements while simultaneously refusing to give the jury access to the testimony recanting those statements. The jurors were informed on multiple occasions that the pertinent testimony could be read back to them, but they ultimately refused. Their refusal occurred in a context where the primary focus of Appellant's closing argument pertained to the credibility of those statements in light of the in-court recantations. Thus, we have no doubt that the jury understood the context of the statements they asked to review. Accordingly, we conclude the trial court did not abuse its discretion when it permitted the

jurors, as per their specific request, and after days of prior deliberation, to review the statements of Jones and Grimes.

**6.**

Next, Appellant contends that his confrontation clause rights under both the state and federal constitutions were violated when the trial court admitted the other-homicide evidence through the testimony of several Commonwealth's witnesses. In Appellant's nearly seven-page argument presenting this claim, he does not cite to a single portion of the record wherein such evidence was received by the court. Accordingly, we conclude that this claim is waived. *See Commonwealth v. Rozanski*, 433 A.2d 1382, 1390 (Pa. Super. 1981) (holding claim of error was waived when the "appellant … failed to cite to the record, advising us either at what point in the trial the asserted objectionable use of the evidence occurred, or in what manner his objection was preserved for appellate review.").

**7.**

Next, Appellant claims the verdict was against the weight of the evidence.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege

that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (internal

citations omitted).

[W]hen reviewing a weight of the evidence claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed. We also observe that [i]n criminal proceedings, the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact, [which] is free to believe all, part, or none of the evidence.

*Commonwealth v. Lewis*, 911 A.2d 558, 566 (Pa. Super. 2006) (internal

citations and quotation marks omitted).

Appellant articulates his weight-of-the-evidence claim as follows:

Appellant withstood a jury trial where the prosecutor and the court were constantly at odds with each other; where the prosecutor and the co-defense counsel were constantly at odds with each other; where the prosecutor repeatedly disobeyed the orders of the court that certain evidence was inadmissible by asking questions related to redacted or sustained evidence; where the prosecutor repeatedly made inappropriate comments in the presence of the jury; where inadmissible hearsay testimony was admitted through witness statements where the contents of the evidence was inadmissible, unreliable, and prejudicial; where the court admitted other acts evidence in violation of the rule that evidence shall not be admitted where its prejudicial affect outweighs it probative value; where the trial court erred in failing to grant a mistrial when Appellant suffered prejudice when the Commonwealth was permitted to disclosed

the incarceration status of the [c]o-[d]efendant's father during the trial specifically where the co-defendant's statement implicating Appellant was not properly redacted; and where other acts evidence was admitted that did not connect [] Appellant or his co-defendant to commission of the other three homicides.

Appellant's Brief, at 54-55.

As the trial court correctly notes, Appellant waived this claim by failing to raise it with adequate specificity in his Rule 1925(b) concise statement. In that statement, Appellant inquired only: "Whether the verdicts were against the weight of the evidence?" Appellant's Rule 1925(b) Statement, at 2 ¶ 3. This court has routinely found similar bald assertions in 1925(b) statement waived for lack of specificity. *See Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa. Super. 2002) (holding weight claim waived where the appellant baldly asserted in his Rule 1925(b) statement that "[t]he verdict of the jury was against the weight of the credible evidence as to all of the charges.").

In any event, it is apparent that Appellant's argument does not adhere to the proper form of a weight-of-the-evidence claim. Instead, Appellant offers a smorgasbord of evidentiary and prosecutorial misconduct claims already addressed in this memorandum to suggest the unreliability of the Commonwealth's evidence. Therefore, we also conclude in the alternative that Appellant's weight claim lacks merit on its face.

## 8.

Next, Appellant complains that he was not afforded the appropriate amount of time-credit towards his sentence for the time he spent in pre-trial

- 26 -

incarceration. Specifically, Appellant contends he is entitled to 1,291 days credit for the time he spent in custody from his arrest on August 25, 2009, until he was sentenced on March 8, 2013.

In its Rule 1925(a) opinion, the trial court indicates that it "confirmed that [Appellant] received the proper time credit" and attached documentation indicating as much. **See** TCO, at 40 (citing TCO, Exhibit B, at 1). Therein, the trial court provides a form provided by the court to the Superintendent of Pennsylvania's State Correctional Institutions indicating that Appellant is to be afforded time-credit for the period of time from "08/28/09" to "03/08/13[.]" TCO, Exhibit B, at 1.

Appellant's purported arrest date of August 25, 2009 conflicts with the beginning date of the time-credit afforded by the trial court of August 28, 2009. However, our review of the certified record indicates that Appellant was arrested on the charges for which he was convicted in this case on August 28, 2009.[6] Accordingly, we conclude that Appellant was afforded the appropriate amount of credit for time served in pre-trial and pre-sentence custody. Thus, his claim lacks merit.

**9.**

---

[6] We note that the record does indicate that Appellant was initially taken into custody on August 25, 2009 on narcotics charges not related to the instant case. Appellant has not provided any argument why he should be afforded time-credit towards his convictions in this case for time spent in custody for an unrelated offense.

Finally, Appellant asserts that "the cumulative effect of unlawfully admitted [evidence] during trial resulted in an unfair trial which demands the grant of a new trial." Appellant's Brief, at 56. Essentially, Appellant argues that, even if he is not entitled to relief on the multiple allegations of evidentiary error and prosecutorial misconduct addressed above, he is entitled to a new trial due to the cumulative effect of these purported errors.

However, Appellant has failed to successfully assert any claims of error, and as to claims of prosecutorial misconduct, we found those claims to have been waived, lacking in merit, or that Appellant failed to demonstrate that he had been denied a fair trial due to the misconduct. As our Supreme Court has stated, "[i]t is settled … that no number of failed claims may collectively attain merit if they could not do so individually." *Commonwealth v. Freeman*, 827 A.2d 385, 416 (Pa. 2003) (internal quotations omitted). Accordingly, Appellant's final claim also lacks merit.

Judgment of sentence *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/2/2015