J-A05041-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL DWAYNE BAGNALL | : | |
| | : | |
| Appellant | : | No. 560 WDA 2018 |

Appeal from the Judgment of Sentence Entered October 30, 2017
In the Court of Common Pleas of Mercer County Criminal Division at
No(s): CP-43-CR-0000419-2015

BEFORE: GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: FILED MARCH 01, 2019

Michael Dwayne Bagnall (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of first degree murder.[1]  After careful review, we affirm.

The trial court summarized the facts of this case as follows:

This case stems from the killing of Jaylan "Bubby" West between the night of February 27, 2015, and the early morning hours of February 28, 2015.  The incident occurred at the home of [Appellant]'s sister, 329 Quimby Street, Farrell, Mercer County, Pennsylvania (the Residence).  The testimony at trial indicated that [Appellant] was celebrating his birthday at the Residence, but the party ended abruptly when an argument broke out.  Sometime after the party had ended, Jaylan West returned to the Residence where he was later shot.

Jamal Norman (Norman) sought the aid of the police to find the victim, Jaylan West, who had gone missing after returning to the Residence.  Upon discovering the victim's body nearby, the Farrell Police investigated the Residence and collected evidence

_____

[1]  18 Pa.C.S.A. § 2501(a).

regarding the victim's death, including several stolen weapons and both live and spent ammunition. Approximately two months later, the property manager for the Residence, Sheila White, turned in a spent bullet slug which was allegedly found in the basement of the Residence by a maintenance worker.

In the two days following the shooting, law enforcement officers tracked a cell phone believed to belong to [Appellant] to the Pittsburgh area. [Appellant] was found in an apartment with his then girlfriend, Amanda Dollman, now Amanda Martino (Martino). [Appellant] was arrested and held in custody pending his trial. [Appellant]'s former cellmate, Matthew Kelley (Kelley), testified that [Appellant] had admitted to murdering Jaylen West. [Appellant]'s friend, John [Gregory (Gregory)], who was at the party, also testified that [Appellant] killed Jaylan West.

Prior to trial, the Pennsylvania Attorney General's Office took over the prosecution of this matter due to a conflict of interest with the Mercer County District Attorney's Office.

Trial Court Opinion, 4/12/18, at 3-4.

On August 25, 2017, a jury found Appellant guilty of first-degree murder. On October 30, 2017, the trial court sentenced Appellant to life imprisonment without the possibility of parole. Appellant filed a timely post-sentence motion in which he raised, inter alia, a Brady[2] claim and claims of prosecutorial misconduct. The trial court held a hearing, after which it denied Appellant's post-sentence motion. This timely appeal followed.

On appeal, Appellant presents two issues for our review:

I.     DID THE TRIAL COURT ERR IN FAILING TO GRANT A NEW TRIAL OR DISMISSAL BASED UPON A BRADY VIOLATION?

II.    DID THE COMMONWEALTH ENGAGE IN PROSECUTORIAL MISCONDUCT?

_____

[2] Brady v. Maryland, 373 U.S. 83 (1963).

- 2 -

Appellant's Brief at 4.

For his first issue, Appellant argues that the trial court erred in denying him a new trial because the Commonwealth committed a Brady violation. Specifically, Appellant asserts that the Commonwealth withheld evidence at Appellant's trial that Gregory, the lone eyewitness to West's murder, received a mitigated range sentence in an unrelated DUI case based on his cooperation in this case.

In Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. As the Supreme Court of Pennsylvania has explained, "[t]he Brady rule encompasses impeachment evidence such as information as to any potential understanding between the prosecution and a witness, because such information is relevant to the witness's credibility." Commonwealth v. Weiss, 81 A.3d 767, 783 (Pa. 2013).

This Court has further explained:

> Our Supreme Court "has limited the prosecution's disclosure duty such that it does not provide a general right of discovery to defendants." Commonwealth v. Cam Ly, [] 980 A.2d 61, 75 ([Pa.] 2009). "Under Brady, the prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights." Id. "'[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.'" Id. (quoting [U.S.]

v. Bagley, 473 U.S. 667, 675 (1985)). "[T]o establish a Brady violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." Commonwealth v. Haskins, 60 A.3d 538, 547 (Pa. Super. 2012) (citing Commonwealth v. Dennis, [] 17 A.3d 297, 308 ([Pa.] 2011)). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." Id. (citing Commonwealth v. McGill, [] 832 A.2d 1014, 1019 (Pa. 2003)) (citation omitted).

Commonwealth v. Robinson, 122 A.3d 367, 373 (Pa. Super. 2015).

Importantly, "[t]he withheld evidence must have been in the exclusive control of the prosecution at the time of trial. Brady is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources." Id. (quotations and citations omitted). Thus, "there is no Brady violation when the defense has equal access to the allegedly withheld evidence." Weiss, 81 A.3d at 783.

Appellant's Brady claim is without merit. First, Appellant fails to establish that the Commonwealth was aware at trial that Gregory had received a mitigated range sentence in the unrelated DUI case in exchange for his cooperation in this case. As indicated above, it was the Pennsylvania Office of the Attorney General (OAG) who prosecuted this case against Appellant, not the Mercer County District Attorney. It was the Mercer County District Attorney's Office, however, that prosecuted Gregory and agreed to him

receiving a lesser sentence in his DUI case. N.T., 3/12/18, at 47-49, 52. Appellant presents no evidence indicating that the OAG was aware of this agreement at the time of Appellant's trial.

Further, the trial court pointed out that there was "no documentation of an agreement" between Gregory and the Mercer County District Attorney. Trial Court Opinion, 4/12/18, at 11. Also, at the hearing on Appellant's post-sentence motion, the Deputy Attorney General commented:

> [W]hen we get a case, as was the case in this case, when we get a case from the District Attorney's Office, we require that they give us every single piece of paper that they have. [Deputy Attorney General] Wagner and I went through every single piece of paper that was sent to us from the District Attorney's Office. There is not one piece of paper in the entire amount of information that was sent to us from the District Attorney's Office that indicated that there was any type of agreement with John Gregory in exchange for his testimony in this case.

N.T., 3/12/18, at 75. On this record, Appellant failed to demonstrate that the Commonwealth willingly withheld material evidence and that the evidence was in the exclusive control of the Commonwealth, and thus the trial court did not err in denying Appellant's Brady claim.

For his second issue, Appellant argues that the trial court erred in denying his prosecutorial misconduct claims. "Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." Commonwealth v. Harris, 884 A.2d 920, 927 (Pa. Super. 2005). "It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent

that a mistrial is warranted." Commonwealth v. Baez, 720 A.2d 711, 729 (Pa. 1998) (quotations and citation omitted).

With respect to prosecutorial misconduct claims, we have explained the following:

> The Pennsylvania Supreme Court has stated that "[t]he essence of a finding of prosecutorial misconduct is that the prosecutor, a person who holds a unique position of trust in our society, has abused that trust in order to prejudice and deliberately mislead [the factfinder]." Commonwealth v. Pierce, [] 645 A.2d 189, 197 ([Pa.] 1994). This trust includes a prosecutor's duty to live up to its agreements with defense counsel. See Commonwealth v. Ginn, 587 A.2d 314 ([Pa. Super.] 1991) (enforcing prosecutor's agreement to dismiss charges if defendants were cleared of theft by an accountant, despite prosecutor's contention that accountant's audit was inadequate). Prosecutorial misconduct will justify a new trial where the unavoidable effect of the conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict. See Pierce, [] 645 A.2d at 196. If the prosecutorial misconduct contributed to the verdict, it will be deemed prejudicial and a new trial will be required. Commonwealth v. Weisman, [] 584 A.2d 980, 985 (Pa. Super. 1990)[.]

Commonwealth v. Francis, 665 A.2d 821, 824 (Pa. Super. 1995). Importantly, claims of prosecutorial misconduct are waived upon the failure to raise a timely objection to the challenged action or inaction of the Commonwealth. Commonwealth v. Ali, 10 A.3d 282, 293 (Pa. 2010).

Appellant argues that the Commonwealth committed prosecutorial misconduct by introducing evidence of a .45 caliber slug found in the basement of the Residence without calling the maintenance worker who found the bullet to testify at trial when the Commonwealth represented to the trial

court and defense counsel that it was going to do so. Appellant asserts that the Commonwealth's misrepresentation caused the trial court to improperly admit hearsay testimony.

In support of this claim, Appellant cites the following portion of the trial transcript:

> [Defense Counsel]: Your Honor, even before this trial began, I told them I am challenging this piece of evidence before we even began. Sheila White doesn't know where it was recovered at because she didn't recover it.
>
> THE COURT: Who recovered it then?
>
> [Defense Counsel]: I don't know who recovered it. That's the problem.
>
> [The Commonwealth Attorney 1]: The maintenance worker is going to testify.
>
> [The Commonwealth Attorney 2]: He is going to testify.
>
> [Defense Counsel]: Oh, he is?
>
> [The Commonwealth Attorney 2]: Yes.
>
> [Defense Counsel]: If he is going to testify that he recovered it then --
>
> THE COURT: All right.
>
> [The Commonwealth Attorney 1]: Yes, the maintenance worker and Sheila White. They are later today.
>
> [The Commonwealth Attorney 2]: They are just later today.

N.T., 8/24/17, at 37-39. Although Sheila White did testify, the Commonwealth never called the maintenance worker to the stand.

We conclude that Appellant has waived this prosecutorial misconduct claim by failing to make a timely objection to the Commonwealth's failure to call the maintenance worker as a witness at trial. Although the above-cited passage clearly reflects Appellant's objection to the introduction of the .45 caliber slug as evidence, at no point at trial did Appellant ever state a claim of prosecutorial misconduct relating to the bullet until he filed his post-sentence motion. Appellant's failure to raise a timely prosecutorial misconduct objection to the Commonwealth's failure to call the maintenance worker results in waiver. See Ali, 10 A.3d at 293.

Even assuming, arguendo, both that Appellant had properly preserved this claim and that the Commonwealth committed prosecutorial misconduct, Appellant would not be entitled to relief. The record contains ample evidence, including eyewitness testimony of the murder, indicating that Appellant killed West and that he did not do so in self-defense as Appellant claimed. See N.T, 8/22/17, at 74-76. Thus, we cannot say that the Commonwealth's alleged misconduct would have rendered the jury incapable of fairly weighing the evidence and entering an objective verdict. See Francis, 665 A.2d at 824. Accordingly, this prosecutorial conduct claim lacks merit.

Appellant additionally argues that the Commonwealth committed prosecutorial misconduct when it referenced hearsay testimony from Jamal Norman indicating that when he and West initially arrived at the Residence, an unknown male told them to leave and not return because "[Appellant] is

going to kill someone tonight." See N.T., 8/25/17, at 91; see also N.T., 8/22/17, at 202-10. The trial court admitted this testimony on the basis that defense counsel opened the door to the testimony by questioning Norman about why he and West left the Residence earlier in the evening, and Norman decided not to return to the Residence later with West. N.T., 8/22/17, at 202-10. Appellant asserts that the Commonwealth improperly treated the testimony as substantive evidence instead of hearsay in its closing argument.

We have stated:

[A] prosecutor's arguments to the jury are [generally] not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict.

A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present [his or her] arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

Commonwealth v. Proctor, 156 A.3d 261, 271-72 (Pa. Super. 2017) (quotations and citation omitted), appeal denied, 172 A.3d 592 (Pa. 2017).

Upon review, we conclude that Appellant has also waived this prosecutorial misconduct claim because he failed to make a timely objection to the Commonwealth's statements during closing argument. See Ali, 10 A.3d at 293; see also N.T., 8/25/17, at 91. Nevertheless, even if Appellant had properly preserved the claim, he would not be entitled to relief. By

- 9 -

referencing Norman's testimony in its closing argument, the Commonwealth simply referred to evidence that the trial court admitted expressly on the basis that defense counsel had opened the door to that testimony. Moreover, in referencing this testimony, the Commonwealth was responding to Appellant's argument that he had acted in self-defense. Thus, the Commonwealth's reference to Norman's testimony did not constitute prosecutorial misconduct. See Proctor, 156 A.3d at 271-72.

Finally, Appellant argues that "not only is [A]ppellant entitled to a new trial but also likewise a dismissal based upon double jeopardy grounds due to the egregious level of prosecutorial misconduct." Appellant's Brief at 30. We conclude that Appellant has waived this issue for failing to include it in his Pennsylvania Rule of Appellate Procedure 1925(b) statement.

In Commonwealth v. Hill, 16 A.3d 484 (Pa. 2011), our Supreme Court explained:

> Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to ad hoc exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court sua sponte, and the Rule applies notwithstanding an appellee's request not to enforce it; and, if Rule 1925 is not clear as to what is required of an appellant, on-the-record actions taken by the appellant aimed at compliance may satisfy the Rule.

Id. at 494 (footnote omitted). Accordingly, because Appellant failed to raise his double jeopardy claim in his Rule 1925(b) statement, he has not preserved it for appellate review.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/01/2019