DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Wood County Court of Common Pleas in a case involving a felony domestic violence conviction. Because we conclude that the trial court's verdict was not insufficient as a matter of law or against the manifest weight of the evidence, and no prejudicial prosecutorial misconduct occurred, we affirm.
 {¶ 2} Appellant, Ronnie L. Myers, III, was indicted by the Wood County Grand Jury on one count of domestic violence with a prior conviction of domestic violence, in violation of R.C.2919.25(A), a fifth degree felony. The charges stemmed from incidents which allegedly occurred at his ex-girlfriend's apartment . Myers pled not guilty and waived his right to a jury trial. The following testimony and evidence was presented to the court.
 {¶ 3} Myers stipulated through counsel that he had a prior conviction for domestic violence in 1999. He also stipulated, for the purposes of R.C. 2919.25, that the alleged victim, Fallon Crane, as the mother of his son, Xavier, was a "household member."
 {¶ 4} Fallon Crane testified that, on October 31, 2001, Myers came to her apartment to pick up then two-year-old Xavier to go "trick-or-treating." Although initially giving permission, Crane changed her mind for religious reasons, telling Myers that the boy could not go with him. According to Crane, Myers became upset and grabbed the child, saying that she could not stop him. When Crane tried to take the child from Myers, he grabbed her throat and choked her with one hand while hanging onto the child with the other.
 {¶ 5} Yelling and screaming at each other, the couple then left the apartment, going to a small shed just outside. Crane stated that Myers again grabbed her around the neck and "slammed" her head into the shed. She continued yelling and grabbing for the child, as Myers moved toward his car and tried to put the child into the back seat. Crane said that Myers once again grasped her with one hand on her neck and smashed her head into the front windshield of his vehicle, cracking the glass. She said she herself never hit Myers, but did keep trying to take the child from him.
 {¶ 6} Crane noted that three people had possibly observed some parts of the altercation: Rachell Johnson, a friend of hers who was at Crane's apartment; Allisha Desmond, another girl who was present; and Myer's friend, Brett Sheets.
 {¶ 7} Xavier was ultimately retrieved from Myers' car and taken back to Crane's apartment. At some point, both Myers and his friend left the scene. Crane was examined by the Emergency Medical Squad ("EMS") and talked with police, stating that her neck was sore. Although a woman from the police department came the next day to take photos, she told Crane that her camera was not working. Although this woman stated that she would come back the next day, she did not, and no photos ever documented any injury to Crane's neck. Crane acknowledged that, although still frightened by Myers' actions, she has allowed Myers to have visitation with Xavier since then. Crane did not go to the hospital the day of the event or receive treatment any time after.
 {¶ 8} Sergeant Rick Luman of the Wood County Sheriff's office, testified that he responded to a 9-1-1 call regarding the events at Crane's apartment. Luman stated that by the time he arrived at the scene, Myers had left and Crane had been examined by the
 {¶ 9} EMS. Crane complained of neck pain and appeared to be upset, but refused to go to the hospital. Luman spoke with Crane and her friend, Rachell Johnson; he noted that Johnson's statement was consistent with Crane's. The sergeant did not see any visible injuries to Crane's neck, but indicated that this in itself was not unusual as bruising often appears the next day. Luman made his report based upon Crane's description of the confrontation.
 {¶ 10} Although subpoenaed by the state, Rachell Johnson did not appear. The state then rested. The court denied Myers' Crim.R. 29 motion for acquittal, based on the witnesses' failure to specifically identify Myers in court.
 {¶ 11} For his defense, Myers then presented the testimony of Brett Sheets, his friend. Sheets testified that he was in the apartment complex to visit a relative and saw part of the altercation between Myers and Crane. Sheets said he saw Myers walking toward his car holding Xavier with one arm. According to Sheets, Crane tried to take the child from Myers, "smacking" and "slapping" him on the back while screaming "Give me back my baby!" Sheets said Myers did not choke Crane, but held his hand out to push her away. Myers handed the child to Sheets who put him in the back seat of the car. Sheets stated that Myers used his body to "bump" Crane in the hips and that she fell backward onto Myers' car. Sheets was unclear about details of the confrontation, but said that he never saw Myers with his hands on Crane's neck. When he realized police were responding to a 9-1-1 call, Sheets left, entering an apartment in the complex.
 {¶ 12} Myers then testified on his own behalf. He stated that when he arrived to pick up Xavier, Crane was in a bad mood. According to Myers, Crane said nothing while he put Xavier's coat on him. Just after he carried the child out the door, however, Crane suddenly came up and started screaming at him to give back her baby. Myers said Crane continued to hit him in the back and grabbed the hood of Xavier's coat. Myers said when he pushed her away to protect the child, Crane fell against the shed. Myers continued to try to take the child to his car and Crane followed, hitting him and screaming. Myers denied ever choking Crane or using his hands to pin her against the shed or car.
 {¶ 13} Myers stated that he then handed the child to Sheets and told him to place the boy in the back seat. According to Myers, Crane then began hitting Sheets. After the child was in the car and the door closed, Crane then braced herself against the driver side door, preventing Myers from getting into the car to drive away. Myers said he used his hip to try to push her out of the way so that he could open the door. When that did not work, he grabbed her by the shoulder and arm and pushed her, causing her to fall back against the car. Myers said that is when Crane's head hit and cracked the windshield. Myers said he then got in the car and unlocked the doors, permitting the "other girl" to remove Xavier from the back seat. Myers then left in an effort to avoid additional confrontations, hoping that the situation would calm down. The defense then rested.
 {¶ 14} On rebuttal, Crane denied that she had grabbed Xavier's hood or that she had hit Myers. She acknowledged that, in making the police report, she had omitted the information that Myers had tried to choke her inside the house.
 {¶ 15} The trial court found Myers guilty of the offense of domestic violence and sentenced him to four years of Community Control Sanctions along with 60 days incarceration in the Wood County Justice Center. Eligibility to apply for work release, and various other special conditions were also established.
 {¶ 16} Myers appeals from that judgment setting forth the following three assignments of error:
 {¶ 17} "First Assignment of Error
 {¶ 18} "The trial court erred by not granting a motion of acquittal sua sponte at the close of the state's evidence and pursuant to Rule 29(A) of the Ohio Rules of Criminal Procedure.
 {¶ 19} "Second Assignment of Error
 {¶ 20} "The verdict of the trial court was not only unsupported by sufficient probative evidence, but was against the manifest weight of that evidence, in that it was not proved beyond a reasonable doubt that appellant violated O.R.C. §2919.25(A).
 {¶ 21} "Third Assignment of Error
 {¶ 22} "The state engaged in improper closing argument by imploring the trial court to give credence to non-existent evidence and urging the court to engage in unfounded speculation in arriving at its decision in this case."
 I. {¶ 23} Myers, in his first assignment of error, contends that the trial court erred in not sua sponte granting a Crim.R. 29(A) motion for acquittal. We initially note that Myers'
 {¶ 24} counsel did, in fact, seek acquittal pursuant to Crim.R. 29 at the close of the state's case. Thus, a "sua sponte" review by the trial court would not have been possible. We will now determine whether the court's denial of Myers' motion for acquittal was proper.
 {¶ 25} When reviewing the denial of a Crim.R. 29(A) motion for judgment of acquittal, an appellate court must evaluate whether, "the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." See State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus. An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that an appellate court uses to review a sufficiency of the evidence claim. See State v. Carter (1995),72 Ohio St.3d 545, 553.
 {¶ 26} "Sufficiency" of the evidence applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine:
 {¶ 27} "`the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 28} R.C. 2919.25 provides that:
 {¶ 29} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 {¶ 30} "* * *
 {¶ 31} "(D) * * * If the offender previously has pleaded guilty to or been convicted of domestic violence, * * * a violation of division (A) or (B) of this section is a felony of the fifth degree * * *."
 {¶ 32} In this case, the motion for acquittal was based upon the fact that Crane did not specifically identify Myers in court. Identity, however, was not an issue. At the beginning of trial, Myers stipulated that Crane was a household member and that he had a prior conviction for domestic violence. By virtue of the stipulation, Myers acknowledged that he was Xavier's father. Crane testified that Myers was the father of her son Xavier and that he was the one who came to pick up the boy and was involved in the altercation. Consequently, at the close of the state's case, there were facts in evidence which established Myers' identity.
 {¶ 33} Furthermore, since Crane alleged that Myers had choked her and slammed her head into a shed and a car, evidence was presented that Myers knowingly caused or attempted to cause physical harm to Crane. Thus, we conclude that, when viewed in a light most favorable to the prosecution, there was more than adequate evidence presented from which "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Therefore, the trial court did not err in denying Myers' motion for acquittal.
 {¶ 34} Myers' first assignment of error is found not well-taken.
 II. {¶ 35} In his second assignment of error, Myers argues that the court's verdict was against the manifest weight of the evidence.
 {¶ 36} When determining whether a verdict is against the manifest weight of the evidence, the appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins,
supra at 387 quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Thompkins,
supra at 387. Additionally, the reversal must be by concurrence of all three judges and the defendant is then granted a new trial. Id. at 389.
 {¶ 37} In the present case, the testimony is conflicting as to whether Myers "choked" Crane or if he simply fended her off. The police officer testified that the statement of one other witness, Rachell Johnson, was consistent with Crane's testimony. Although Myers' friend, Brett Sheets, testified that he did not see Myers with his hands on Crane's neck, he also acknowledged that he did not see the couple when they first left the apartment. In addition, Sheets' testimony was sparse as to details concerning the confrontation at the car. Finally, despite Myers' denial that he only pushed Crane aside, it seems unlikely that a simple push would have caused Crane's head to crack the car windshield. It was within the court's purview to find Crane's testimony more credible than Myers'. After a thorough examination of the record, we cannot say that the trial court's verdict was against the manifest weight of the evidence.
 {¶ 38} Accordingly, Myers' second assignment of error is found not well-taken.
 III. {¶ 39} In his third assignment of error, Myers claims that the prosecutor made improper remarks, including prejudicial allusions to facts not in evidence.
 {¶ 40} An appellate court need not consider an error which could have been addressed or corrected if it could have been, but was not called to the attention of the trial court. State v.William (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, vacated in part on other grounds. In this case, no objection was made at trial during the state's closing arguments. Consequently, we must examine this issue under the doctrine of "plain error." Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise." See Crim.R. 52(B); State v. Underwood
(1983), 3 Ohio St.3d 12, 13; State v. Long (1978),53 Ohio St.2d 91.
 {¶ 41} Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial. State v. Loza (1994), 71 Ohio St.3d 61, 78. Both the prosecution and the defense have wide latitude during opening and closing arguments; questions as to the propriety of these arguments are generally left to the trial court's discretion. Loza, supra; State v. Brown (1988),38 Ohio St.3d 305, 317. A closing argument must be reviewed in its entirety to determine whether prejudicial effect occurred. State v. Frazier
(1995), 73 Ohio St.3d 323, 342. The test for prosecutorial misconduct is whether the prosecutor's comments were improper and, if so, whether those remarks prejudicially affected the defendant's substantial rights. State v. Eley (1996),77 Ohio St.3d 174, 187; State v. Lott (1990), 51 Ohio St.3d 160. Moreover, "in a bench trial, the trial court is presumed to rely on only relevant, material evidence in arriving at its judgment."State v. Lane (1995), 108 Ohio App.3d 477, 484, citing, Statev. Richey (1992), 64 Ohio St.3d 353, 357.
 {¶ 42} After reviewing the closing arguments, we can find nothing in the record which indicates that the trial court was influenced by any improper comments by the prosecution. Both the state and defense counsel drew their own conclusions from the facts presented — standard procedure during closing arguments. Therefore, Myers' argument that the prosecutor's closing argument prejudiced his rights is without merit.
 {¶ 43} Accordingly, Myers' third assignment of error is found not well-taken.
 {¶ 44} The judgment of the Wood County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Handwork, Lanzinger, and Singer, JJ., concur.