NOT DESIGNATED FOR PUBLICATION

No. 125,623

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EFE CLINTON OSAGHAE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Submitted without oral argument. Opinion filed April 19, 2024. Affirmed.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., SCHROEDER, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: Efe Osaghae timely appeals, seeking relief from his 68-month term of imprisonment. Osaghae pled guilty to two counts of aggravated sexual battery and now claims the State improperly argued facts not in evidence at his sentencing hearing. Osaghae also claims the district court engaged in unconstitutional judicial fact-finding to enhance his postrelease supervision from a 60-month period to life. Upon an extensive review of the record, we find no error and affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

In January 2020, the State charged Osaghae with one count each of rape, aggravated criminal sodomy, aggravated sexual battery, aggravated battery, and aggravated burglary for an incident that occurred in December 2019 against N.M. During a K.S.A. 60-455 hearing, the district court found the State's evidence that Osaghae committed a strikingly similar sexually violent incident against G.D. in December 2016 was more probative than prejudicial. Osaghae ultimately entered a plea agreement and pled guilty to two counts of aggravated sexual battery in violation of K.S.A. 2016 Supp. 21-5505(b)(1) and K.S.A. 2019 Supp. 21-5505(b)(1). In exchange for his plea, the State dismissed the remaining charges and agreed not to file new or additional charges stemming from allegations made by G.D. and three other women.

At the sentencing hearing, Osaghae offered a forensic psychological evaluation by Dr. Jarrod Steffan into evidence. Dr. Steffan's report noted Osaghae's risk of sexual recidivism under the Static-99R was average. Dr. Steffan also provided statistics related to the recidivism rates of sexual offenders who had the same recidivism score as Osaghae. At sentencing, given Osaghae's criminal history and his convictions, he landed on the sentencing grid as a border box. The district court denied Osaghae's request for probation and sentenced Osaghae to a total prison term of 68 months' imprisonment—34 months' imprisonment for each count—and lifetime postrelease supervision.

ANALYSIS

*The State Improperly Argued Facts Not in Evidence at Osaghae's Sentencing Hearing*

Osaghae argues the prosecutor, during sentencing, improperly commented on recidivism rates and the prosecution of sexual assaults. Osaghae contends the district

2

court relied on the prosecutor's unsupported statistics in declining to grant Osaghae probation as a border box finding and instead sentencing him to a term of imprisonment.

A prosecutor's comments made during voir dire, opening statement, or closing argument are reviewed by appellate courts even if the defendant failed to contemporaneously object. *State v. Sean*, 306 Kan. 963, 974, 399 P.3d 168 (2017). Prosecutorial error may also occur during a nonjury setting such as a sentencing hearing before a district judge. *State v. Blevins*, 313 Kan. 413, 437, 485 P.3d 1175 (2021); *State v. Wilson*, 309 Kan. 67, 77, 431 P.3d 841 (2018). Appellate courts use a two-step process— looking at error and prejudice—to evaluate claims of prosecutorial error:

"To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

"Prosecutors enjoy wide latitude in crafting closing arguments. This latitude allows a prosecutor to argue reasonable inferences that may be drawn from the admitted evidence, but it does not extend so far as to permit arguing facts that are not in evidence. [Citations omitted.]" *State v. Pribble*, 304 Kan. 824, 832, 375 P.3d 966 (2016). A prosecutor's statements should not be viewed in isolation but in the context in which the statements were made. *State v. Timley*, 311 Kan. 944, 949-50, 469 P.3d 54 (2020).

Osaghae alleges the prosecutor erred in arguing and relying on facts not in evidence at Osaghae's sentencing hearing. At sentencing, the prosecutor argued in part:

"The one thing I wanted to refer to specifically out of Dr. Steffan's report, I'm just going to read from it. . . . 'Mr. Osaghae's Static-99R total score of plus 3 placed his

3

risk of sexual recidivism in Level III, average risk. Sexual offenders who obtain the same score as Mr. Osaghae were prosecuted,' I think that word is important, 'prosecuted for sexual offenses at a rate of 6.5 percent and 10.1 percent . . . [respectively].'

"Here's why prosecuted is important. We know that sexual assault victims seldomly come forward. And we know that from the ones that come forward, very few are prosecuted. And from the ones that are prosecuted, very few are convicted. And even of the ones that are convicted, it's even less still that those people are held accountable and sent to prison.

"So we're talking about statistics of 6.5 and 10.1 percent over a follow-up period of 5 or 10 years, [respectively], that were prosecuted, I would imagine somehow, someway, that those numbers are actually much higher in terms of recidivism because persons who are prosecuted is going to be a smaller number than those who actually commit offenses."

Using the two-step process—looking at error and prejudice—the prosecutor exceeded the wide latitude afforded to make reasonable inferences and argued facts not in evidence. Without expert testimony, the methodology for determining recidivism rates is unclear as well as the extent the statistics account for victims who do not report sexual violence or simply decide not to testify, hindering prosecution. The State relies on *In re Care & Treatment of Williams*, 292 Kan. 96, 253 P.3d 327 (2011), for the assertion that "[i]t is well-known that sex crimes are underreported and not always successfully prosecuted even when they are reported." But *Williams* was a sufficiency of the evidence case determining whether Williams was a sexually violent predator. In *Williams*, two expert witnesses testified and criticized the reliability and accuracy of the risk assessment instruments—something the State should have done here to enter such facts into evidence at Osaghae's sentencing. See 292 Kan. at 109. While it may be common knowledge, particularly to a district judge, that sexual offenses are underreported, it was error for the prosecutor to argue facts not in evidence—being the recidivism statistics were higher than suggested. In fact, Osaghae responds the State incorrectly relied on *Williams* and "does little but repeat the facts not contained in evidence that were introduced by the prosecutor at sentencing."

Still, Osaghae's claim fails under the prejudice prong of the analysis as the prosecutor's statements were harmless and did not affect the outcome of Osaghae's sentencing. In addressing prejudice, appellate courts

"apply the constitutional harmlessness standard laid out in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), which demands the State show beyond a reasonable doubt that the prosecutorial error did not affect the trial's outcome in light of the entire record. In other words, the question is whether there is no reasonable possibility that the error contributed to the [decision]." *State v. Flack*, 318 Kan. 79, 111, 541 P.3d 717 (2024).

The State claims Osaghae disregarded the district court's extensive discussion explaining its ruling. At sentencing, the district judge provided a lengthy explanation supporting Osaghae's sentences. The district judge stated this was a challenging case and, after reviewing the case file in some detail, explained:

- Society should be ashamed of the way sexual assault victims are treated;
- putting an individual in prison prevents the perpetration of the same kind of acts, at least for a period of time;
- the State and victims asked the district court to provide the maximum sentence;
- Osaghae could have received a 310-month standard sentence if he had been convicted of rape and aggravated criminal sodomy as alleged in the State's original complaint;
- Osaghae will be punished for the rest of his life as he will have to register as a sex offender for the next 25 years, his crimes cannot be expunged, and he will forever be a criminal history B;
- "This isn't a one-time, this is a two-time occurrence in our community. God only knows how many others occurred that victims don't come forward.";

5

- "[W]e know that very few sexual assaults get reported, and it's very understandable why.";
- Osaghae only had one minor bond violation in two and a half years;
- the forensic psychological evaluation conducted six weeks before sentencing showed Osaghae did not take ownership of his actions, claiming the incident with N.M. was consensual;
- Osaghae failed to attend counseling related to alcohol consumption while on bond; and
- the court must decide in the defendant and victims' best interests.

The State lays out these points in its argument on appeal and establishes there is no reasonable possibility any prosecutorial error contributed to how the district court imposed Osaghae's sentences. While the district court seems to have accounted for the State's erroneous comments during the sentencing hearing, it also noted Osaghae benefited from his plea bargain, receiving a 68-month prison sentence instead of a potential prison sentence of over 300 months. The district court also explained Osaghae committed sexually violent crimes against two women and would be prevented from further perpetrating such crimes for a period of time if he was placed in prison. Osaghae also failed to take accountability for his actions until the time of sentencing when he asked for probation and failed to attend counseling while he was on bond. Further, the State correctly points out Osaghae's sentencing range fell in a border box, and he received presumptive sentences, which cannot be challenged on appeal. See K.S.A. 21-6804(f); K.S.A. 21-6820(c)(1).

Even though we are prohibited from reviewing a presumptive sentence on appeal, we still exercise jurisdiction over Osaghae's prosecutorial error claim. As noted above, our Supreme Court articulated a two-part test to review claims of prosecutorial error in *Sherman*. The *Sherman* court explained the test accounts for "any and all claims asserted by a criminal defendant that his or her Fourteenth Amendment [to the United States

6

Constitution] due process rights to a fair trial have been violated by any act or statement of the prosecutor." 305 Kan. at 108. Here, Osaghae frames his argument as a due process violation under the Fourteenth Amendment as the prosecutor's statements exceeded the wide latitude afforded to conduct the State's case.

We analyze this issue similar to that of a *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) violation—a question of whether the defendant received a fair trial if the State willfully or inadvertently withheld material exculpatory evidence. Upon the finding of a *Brady* violation, "'[t]he reversal of a conviction is required upon a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."'" *State v. Francis*, 282 Kan. 120, 151, 145 P.3d 48 (2006). That is, even if the defendant subsequently received a presumptive sentence, upon the finding of a *Brady* violation, the panel would be required to reverse the defendant's conviction. Similarly, a claim of prosecutorial error, another question addressing whether the defendant received a fair trial, should be reviewed regardless of whether the sentence fell within the presumptive range. Thus, we have jurisdiction over Osaghae's prosecutorial error claim despite the fact the district court ordered presumptive sentences.

While the prosecutor erred in commenting on facts not in evidence during Osaghae's sentencing, Osaghae was not prejudiced by such error. Osaghae's sentencing range fell within a border box, and the district court had discretion to sentence Osaghae to a term of imprisonment or probation. The district court chose imprisonment within the presumptive range with consecutive terms. See K.S.A. 21-6804(e)(1); K.S.A. 21-6819(b).

*The District Court Did Not Engage in Unconstitutional Judicial Fact-Finding to Enhance Osaghae's Postrelease Sentence*

Osaghae argues the district court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by engaging in unconstitutional judicial fact-finding to enhance his postrelease supervision to a term of life. Osaghae specifically argues the district court determined he was over the age of 18 when he committed his sexually violent crimes—a finding of fact—and consequently imposed lifetime postrelease supervision. Osaghae asks us to remand to the district court to impose a postrelease supervision term of 60 months. The State asserts the district court did not violate *Apprendi* by ordering lifetime postrelease supervision and any constitutional error was harmless.

Although Osaghae failed to raise the issue before the district court, the parties agree the issue is properly before us as it is purely a legal question that is determinative of the case and concerns fundamental rights. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Our appellate courts have addressed similar constitutional claims for the first time on appeal on the basis the claim was a purely legal question based on undisputed facts. See *State v. Anthony*, 273 Kan. 726, 727, 45 P.3d 852 (2002); *State v. Conkling*, 63 Kan. App. 2d 841, 843, 540 P.3d 414 (2023). We will proceed to address the issue under the same exception.

In *Apprendi*, the United States Supreme Court determined "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. But, in *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), the United States Supreme Court noted, for *Apprendi* purposes, a sentencing judge can consider "facts reflected in the jury verdict or admitted by the defendant." Whether a district court violated a defendant's constitutional rights under *Apprendi* at sentencing "'raises a

question of law subject to unlimited review.'" *State v. Huey*, 306 Kan. 1005, 1009, 399 P.3d 211 (2017).

K.S.A. 22-3717(d)(1)(G)(i) states: "[P]ersons sentenced to imprisonment for a sexually violent crime on or after July 1, 2006, when the offender was 18 years of age or older, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life." K.S.A. 22-3717(d)(1)(G)(ii) states: "Persons sentenced to imprisonment for a sexually violent crime committed . . . when the offender was under 18 years of age, and who are released from prison, shall be released to a mandatory period of postrelease supervision for 60 months."

Osaghae contends his convictions did not require proof he was over the age of 18 when the crimes were committed and a judicial admission regarding his age does not equate to a guilty plea or elemental stipulation. The State responds Osaghae admitted his age under oath at sentencing as well as in multiple presentence documents. While Osaghae acknowledges other panels of this court have rejected similar arguments in unpublished opinions, he fails to cite the most recently published opinion stating the same: *Conkling*, 63 Kan. App. 2d at 844-45.

In *Conkling*, another panel of this court found Conkling's own admissions established he was over 18 years old. The panel noted Conkling admitted his age in his application for appointed defense counsel, in his signed petition to enter plea agreement, and under oath at the plea hearing. 63 Kan. App. 2d at 844-45. Similarly, Osaghae's admissions establish there is no *Apprendi* violation. Osaghae testified under oath he was 24 years old at the time of sentencing in August 2022. In addition to testifying, Osaghae admitted his forensic psychological evaluation into evidence at sentencing which stated his birth date was January 14, 1998. Osaghae's birth year was also listed in the State's original complaint, amended complaint, Osaghae's signed acknowledgment of rights and

9

entry of plea, his signed notice of duty to register, and his presentence investigation report.

The record is clear. By Osaghae's own admissions, he was over 18 years old when he committed his crimes, and he makes no attempt to show otherwise. The district court's finding Osaghae was over the age of 18 when he committed his crimes did not violate *Apprendi*. As such, it is unnecessary to reach the State's alternative argument of harmless error.

Affirmed.